McAdam, J.
The plaintiff entered into a contract with the Hatch Lithographic Company, by which the latter was to perform services in making lithographic drawings or impressions on stone, from which prints or colored lithographs were to be printed from time to time for the plaintiff, at agreed prices. The drawings became the property of the plaintiff, while the stones upon which the impressions were made and taken belonged to the Hatch Lithographic Company. ' While the stones were thus owned, the latter company executed a chattel mortgage thereon, which was foreclosed, and at. the foreclosure sale the property was bought in, and eventually found its way into the hands of the defendant. The plaintiff tendered to the defendant the sum of $247.50, which, it claims, was the price fixed by the defendant as the value of the lithographic stones upon which the drawings were made, and demanded from the defendant the delivery of the drawings, which, of course, included the stones upon which the impressions were made, for the one could not be delivered without the other ; but the defendant refused to comply with the demand, and the plaintiff brought this action in trover as for conversion, claiming .$5,000 damages. The complaint was dismissed upon the ground that the plaintiff had no title to the stones, hence could not maintain conversion. The present is an application for a new trial-
The plaintiff’s counsel at the trial, when asked by what process his client became possessed of title to the stones-,' *375 replied, “ By confusion of property but the intermixture in this instance was by the consent of all the parties, so that the owners became tenants in common of the property according to their respective interests (Cowetis Treat., § 580), and the rule applicable where one unlawfully makes the intermixture, as illustrated by the cases referred to in § 579 {supra) has no application ; nor does the theory of accession of property apply, for the reason that the stones would be regarded as the principal, the impressions a mere incident, and if that rule were applied, the title to all would be in the owner of the stones.
The rule is settled that neither replevin nor trover for conversion will lie by one tenant in common of a chattel against another for taking or. disposing of the chattel. The plaintiff in such an action must claim as sole owner, and must stand or fall upon that claim (Hudson v. Swan, 83 N. Y. 552).
The case resembles that of Dodworth v. Jones, 4 Duer,. 201, in which a stereotyper who was employed to prepare stereotyped plates of a “ copyright ” book, and made them out of materials belonging to himself, and with his own labor, was held entitled to retain the plates, and that he could not be divested of his legal title to the product or plates by a tender, unaccepted, of just compensation for his labor and materials. In that action the court held that the plaintiff, in order to recover, must establish a legal title to the plates, or a special property in them, with the right of actual possession at the time the action was commenced, and added: “ What remedies might be taken by the plaintiff to prevent a use of the plates by-defendant’s firm if it should attempt to print the book it is useless to discuss.”
The plaintiff had a clear right of action against the Hatch Lithographic Company for any breach of its contract arising from its refusal or inability to carry it out; but it does not follow that such right of action gave to the plaintiff any title to the stones, or any right to their *376 possession. Perhaps the plaintiff might by bill in equity have maintained a suit for the partition of the several rights of property in the stones and the impressions on them, in which the value of the stones might have been judicially established and a sale ordered, with directions to pay such value out of the proceeds, and the residue to the plaintiff, in case it had elected to permit such a sale to go on (Prentice v. Janssen, 79 N. Y. 478); or the plaintiffs, at said sale, might have purchased the property, and, by paying the value legally fixed upon the stones, acquired title to the stones, as well as the impressions ; or the defendant might have been directed to deliver up the stones on payment of the value.thereof as determined. The plaintiff is seemingly entitled to such relief in an appropriate suit on principles of natural right and justice. This seems to be in accord with the ruling of Foster v. Ward, L. R., Ireland, vol. 9, pp. 446, 468, Chancery Division, in which a similar question was decided, as well as with the civil law, and the views of Justinian, to which the attention of the court has been called by counsel.
Upon the case as presented, and in the absence of proof of usage of the trade in regard to such matters, which might or might not have been available, the complaipt was properly dismissed,’ and the motion for a new trial must be denied.
Upon appeal to the General Term of the Superior Court, the following opinion- was rendered :
Freedman, P. J.
The motion for a new trial was made on the minutes of the trial judge upon the grounds specified in § 999 of the Code of Civil Procedure. But the trial had. been by a judge without a jury by consent of the parties. The section referred to in express language applies only to jury trials. The order appealed from must, therefore, be affirmed, irrespective of the ■reasons for which it was made.
Upon the appeal from the judgment it must be held *377 that the complaint was properly dismissed for the failure of the plaintiff to establish title to the stones. The action being for conversion, the plaintiff was bound to establish title. The stones must be regarded as the principal and the impressions as a mere incident. The plaintiff could not acquire title to the stones by a mere offer to pay their value which was refused. The contract of the plaintiff was with the Hatch Lithographic Company, and the latter, and not the defendant, agreed to put upon certain stones certain drawings of the plaintiff, and that the impressions were to be the property of the plaintiff and were to be used exclusively for the benefit of the plaintiff. But the Hatch Lithographic Company remained the absolute owner of the stones and was lawfully in the possession of them. It was conceded by the plaintiff that after the making of said' contract the Hatch Lithographic Company, while so in possession, mortgaged the stones, that the mortgage was foreclosed, that on the sale the stones were purchased by Fuchs & Lang, and that the defendant purchased from them. It nowhere appears that the defendant-company, at the time it acquired title to the stones, had any knowledge or notice of the arrangement between the plaintiff and the Hatch Lithographic Company.
Under these circumstances conversion cannot be maintained by the plaintiff against the defendant based upon a mere refusal to deliver up the impressions, because a delivery of them cannot be made without giving up the stones. Nor is a mere refusal to permit a transfer to be made sufficient to sustain the action. Conversion would only lie, if at all, upon proof of the destruction of plaintiff’s interest in the impressions. Short of that, and under the special circumstances of this case, plaintiff’s remedy against the defendant is in equity. .Moreover, the plaintiff clearly has a good cause of action against the Hatch Lithographic Company for breach of contract.
The authorities cited by plaintiff’s counsel have been *378 duly examined, but they do not call for reversal. However true it may be as a general rule of our law of personal property, that no man can be divested of his property without his own consent, and that, consequently, even a bona fide purchaser from a person in possession of property, who has no title to it, and no authority whatever from the owner to sell or dispose of it, cannot acquire any title against the true proprietor, there are, in fact, numerous exceptions to the rule.
Thus the law will, in many cases, imply an authority from the owner to sell, and where the owner has conferred an apparent right of property upon the vendor, or an apparent right of disposal, and has furnished the vendor with the external indicia of such right, and the vendor has sold the goods and delivered the possession thereof, the law will protect a purchaser who has acquired the property for a fair and valuable consideration, in the usual course of trade, and without any notice of any conflicting claim, or of suspicious circumstances calculated to awaken inquiry or to put him on his guard, although the goods were, in fact, obtained by the vendor from the true owner fraudulently. In the case at bar the difficulty with the claim of plaintiff’s company is, that the said company saw fit to expend its money for impressions, upon stones under a contract with a third party without acquiring title, or the right of immediate possession, to. the stones themselves.
For the reasons stated the complaint was properly dismissed, but as the dismissal was upon plaintiff’s own showing, and without making any findings, it should not have been upon the merits.
The judgment should, therefore, be modified by striking-out the words “ upon the merits,” and, as thus modified,, affirmed.
The affirmance of the judgment as modified should be without costs upon this appeal, but the respondent may *379 have $10 costs and disbursements upon the affirmance of the order.
William O. Campbell, for appellant.
I. Title to personal property cannot be divested except by the fault or with the consent of the owner. After demand and refusal, trover may be maintained by the true owner against any person, even a bona fide purchaser for value. There can be no doubt but that the owner may follow the goods (Barrett v. Warren, 3 Hill, 348).
In further support of this proposition it will be sufficient to cite the cases where it has been discussed and maintained (Hall v. Robinson, 2 N. Y. 293; Ely v. Ehle, 3 Id. 506; Wooster v. Sherwood, 25 Id. 278; citing Brower v. Peabody, 13 Id. 121; Saltus v. Everett, 20 Wend. 267; 2 Kent's Com. 621; Boyce v. Brockway, 31 N. Y. 490; Bassett v. Spofford, 45 Id. 387; Barnard v. Campbell, 55 Id. 456; Gillet v. Roberts, 57 Id.. 28, 34; Everett v. Coffin, 6 Wend. 604; Williams v. Merle, 11 Id. 80; Hoffman v. Carow, 22 Id. 285, 294; Prescott v. De Forest, 16 Johns. 159).
II. Knight, the plaintiff, had title to the pictures on-the “ key-stones ” or “ mother-stones.” The Hatch Lithographic Company were bailees only.
This proposition can be maintained by the principles-of the common law. A very able discussion of almost the precise question involved here will be found in the-action of Foster v. Ward, L. R., Ireland, vol. 9, pp. 446, et seq. That was a case, as will be seen from the report, where lithographic stones had been prepared by the firm, of Marcus Ward & Co. for Mr. Foster, under an arrangement almost identical with the arrangement between plaintiff and the Hatch Lithographic Company. It is not necessary to discuss this case at length, because the court will read it. It is sufficient to say that in that case the court awarded the plaintiff the possession. *380 of the stones with the" drawings on them, and laid down the principle that the only thing necessary for the plaintiff to do was to pay the defendant, for the .value of the lithographic stone itself. It will be seen by the pleadings that it is admitted in this case that Mr. Knight did offer the Sackett & Wilhelms Lithographic Company the value of the stones as fixed by themselves.
*379 DUGRO and GlLDERSLEEVE, JJ., concurred.
*380 Mr. Knight says that the pictures were to remain his, and this is. not contradicted.
III. The plaintiff, having a property right in the pictures or drawings on the stones', acquired the right to the stones themselves by paying to the defendant the value of the stones. .
It is admitted that Mr. Knight tendered the value of the stones, and consequently, for the purposes of this discussion, it must be assumed that he has paid for them, there being no objection to the tender.
I have been unable to find in this State any case which would exactly support the proposition now under consideration, but there is no lack of authority in the civil law and the Code Napoleon. It is certainly a monstrous doctrine to maintain that this plaintiff must lose nearly two thousand dollars’ worth of drawings or pictures, in the highest degree useful to him, simply because defendant claims title to and will not sell $247.50 worth of stones on which the pictures have been placed. This value is fixed by defendant. I assume that the court will be swift to find relief for him, even if it must go to the civil law for it.
Inst. Justinian (Sander’s Trans.), lib. II., tit. L, § 25.
When materials belonging to different persons were mixed together, or one person bestowed his labor on the materials of another, although only one person might be the owner of the product, yet he did not become so at the expense of others. He was obliged to pay those whose materials or labor had been employed, the value of *381 their respective materials or labor, and was liable to a personal action for the enforcement of the payment.
List. Justinian (Sander’s Trans.), lib. II., tit. I., § 34 ; Gains Institute II.; § 77.
“ If a person has painted on the tablet of another, some think that the tablet accedes to the picture, others, that the picture, of whatever quality it may be, accedes to the tablet. It seems to us the better opinion that the tablet should accede to the picture; for it is ridiculous that a painting of Appeles or Parrhasius should be but the accessory of a thoroughly worthless tablet. But if the owner of the tablet is in possession of the picture, the painter, should he claim it from him, but refuse to pay the value of the tablet, may be repelled by the exception of dolus malus . . . and vice versa. ... If the tablet has been stolen, whether by the painter or anyone else, the owner of the tablet may bring an action of theft.”
Code Napoleon, book 2, § 11.
Art. 565. The right of accession having for its object two things movable which belong to different masters is entirely subordinate to the principles of natural equity. The following rules shall serve as examples to guide the judge in determining cases not provided for according to the peculiar circumstances.
Art. 566. When two objects appertaining to different masters, which have been united in such a manner as to form one whole, are, nevertheless, separable, so that one can subsist without the other, the whole belongs to the master of'that which forms the principal part, on condition of paying to the other the value of the one which was united to it.
Art. 567. That is to be deemed the principal part to which the other was only united for the use, ornament or completion of the first.
Art. 569. If, of two objects united in order to form one whole, the one cannot be regarded as accessory to the other, that shall be deemed the principal which is most *382 considerable in value or in size, if the value of both is nearly equal.
Art. 570. If an artisan or any person whatsoever has employed a material which did not belong to him, in order to form something of a new description, whether the material can or cannot" be restored to its original shape, the proprietor thereof has the right to claim the thing which has been formed from it, on paying the price of the workmanship.
Art. 571. If, however, the workmanship were so important that it surpassed by much the value of the material employed, the labor shall then be deemed the principal part, and the artificer shall have the right to retain the thing wrought on, paying the price of the material to the proprietor.
Art. 572. Where a person has made use of materials which partly belong to him and partly do not, in order to form an object of a new description, without having destroyed any of the materials, but in such a way that they cannot be separated without inconvenience, the object is common to both proprietors, etc.
IV. One tenant in common can maintain trover as for conversion against his co-tenant.
The case of Hudson v. Swan, 83 N. Y. 552, is cited to support the foregoing statement.
There can be no question but that the action can, under proper circumstances, be maintained by one tenant in common against his co-tenant, and it is to a discussion of this question that I wish to invite the attention of th court.
An examination of the authorities is instructive and interesting. Littleton, 1 Inst., 199, b, § 323, illustrates the rule in his time, when he says :
“ If two be possessed of chattels personal in- common by diverse titles, as of a horse, an ox, a cow, if the one takes the whole to himself out of the possession of the ■other, the other hath no other remedy but to take his *383 from him who hath done the wrong to occupy in common when he can see his time.”
And Cofee, commenting on that passage, approves of it (i Inst., 200, a).
Beginning with the statement of the law as just laid down, there has been an astonishing advance.
In this State it was formerly the rule that one tenant in common could not maintain trover against his co-tenant for merely dispossessing him,' or excluding him irom the enjoyment of the chattel, although he might do .so if the chattel were destroyed or sold. This principle is upheld in Fiero v. Betts, 2 Barb. 633; Hyde v. Stone, 7 Wend. 354; s. c., 9 Cowan, 230; Gilbert v. Dickerson, 7 Wend. 449; Mumford v. McKay, 8 Id. 442; Farr v. Smith, 9 Id. 338; White v. Osborne, 21 Id. 72; Van Doren v. Balty, 11 Hun, 239; 2 Hilliard on Torts, 246; Hyde v. Noble, 13 N. H. 494; Parker v. Middlebrook, 24 Conn. 207.
In Osborne v. Schenck, 83 N. Y. 201, we find this broad principle laid down : “ The possession and use of one tenant in common of a chattel, though it prevents the possession and use of the other, can furnish no ground for action, since it is rightful and rests on legal authority. But it also follows that if that possession develops into a destruction of the property, or of the interest of the co-tenant, or into such hostile appropriation of it as" to exclude the possibility of beneficial enjoyment by him, , . . then a conversion is established.”
V. The plaintiff having a title to" the drawings, the defendants were guilty of a conversion when they refused to allow a transfer to be taken. And it matters not whether we treat the defendants as tenants in common or as bailees.
VI. Plaintiff should have a new trial on the ground that the case was not fully presented to the-trial court.
VII. There is no resemblance between the case at bar and the case of Dodworth v. Jones, 4 Duer, 201, which is *384 cited in the opinion of the trial court, at folio 68, printed case.
Artemas B. Smith, for respondent.
I. This appeal presents no question which this court will review (Bridger v. Weeks, 30 N. Y. 328; Wood v. Lary, 124 Id. 83, 87; Gilman v. Prentice, 132 Id. 488).
II. Appellant has acquired no property in the stones (Gregory v. Stryker, 2 Den. 629; Dodworth v. Jones, 4 Duer, 201).
III. Appellant failed to show any violation of his rights, or damages sustained by him, Lennan v. Smith (124 N. Y. 581; Stevens v. Gladding, 17 How. U. S. 447).
Gray, J.
The plaintiff brought this action to recover damages of the defendant for an alleged wrongful conversion of certain personal property, consisting in lithographic drawings or engravings. Upon the trial the complaint was dismissed upon the plaintiff’s case. According to his evidence, being desirous to obtain lithographic engravings for use upon covers of writing tablets, he made an oral agreement with the Hatch Lithographing Company that the company should make engravings upon stones for him, from designs to be furnished at a stipulated price for each engraving, and that colored prints should be made therefrom when requested, at agreed rates. He testified that it was their agreement that the ownership of the engravings should be in him, and of the stones in the Hatch Company, and that the duration of the agreement was not fixed. It was admitted that the plaintiff had paid bills for the labor of engraving the stones. Chattel mortgages were given by the Hatch Company upon its properties, and, under foreclosure, these stones were sold, and ultimately came into the possession of the defendant, who refused to deliver them to the plaintiff when he tendered the mere value of the stones themselves.
The dismissal of the complaint, on the plaintiff’s showing, was undoubtedly right; for he failed to show that he *385 had any property in, or any right to, the possession of these stones at any time. He never had any interest in the stones except under his contract with the Hatch Company, which gave him the right to have impressions or prints made from them. It is true that he had paid for the labor of engraving them ; but it is very clear from his evidence that, by the agreement into which he entered with the lithographing company, the ownership of the stones continued in the company, and that he was only to have his printing done at so much per thousand sheets. The contract between him and the Hatch Company was one which bound the latter to render its skilled services and which secured to it a fixed compensation. The appellant suggests that the transaction came under a head of bailments known as locatio opcris faciendi; but that would only have been the case if the plaintiff had furnished the stones and had employed the lithographers to do the engraving upon them. The learned trial judge thought that a tenancy in common of the stones had been created, and his dismissal of the complaint was upon the ground that trover for conversion would not lie unless the plaintiff could claim as sole owner. But we do not think that the contract testified to, made out an ownership in common. Ownership may rest upon agreement; but no inference can be drawn from the plaintiff’s version of the transaction that the Hatch Company had agreed that the stones, as engraved, should be owned in common. The evidence was that the stones were to belong to the Hatch Company, and that it was not to print from them for anybody else. The plaintiff says: “ These designs were to be held upon the stones for me for no purpose whatever except to do my printing as I might order it, that is all. That is the reason they were to be kept upon the stones for me.” Taking the plaintiff’s statement of the transaction, it is plain that the Hatch Company had bound itself to hold, and to'print from, these particular designs (the ownership of which seems to have been secured to the *386 plaintiff in part, if not wholly, by copyright) whenever ordered by, and solely for, the plaintiff at stipulated rates. This agreement, in its exclusive features, rested upon the consideration of what plaintiff was to pay at once towards the expense of doing the work of engraving, and upon the profits to be derived from the business to be given thereafter.
The agreement negatives the idea of any ownership in plaintiff of these stones, by the nature of its requirement of services to be rendered and from the absence of any claim to.own the stones themselves. Nor was there any confusion, or an admixture of any property of the plaintiff withj or in, the property of the Hatch Company. The agreement testified to, again negatives that idea. To that agreement plaintiff could hold the company, and if, by parting with the stones, it disabled itself from performing its agreement, it exposed itself to an action for its breach. In such an event, however, no rights of the plaintiff would attach to and follow the stones into the hands of strangers, other than, at furthest, such as equity might recognize. It is quite possible that such an agreement would be recognized and protected in a court of equity, and that relief might be obtained by injunction or otherwise, if necessary to protect the plaintiff’s rights against an improper use or a destruction of the lithographs. But it is not necessary or proper to decide the question here, and upon such proofs, whether the defendant acquired any greater or other rights to the use of these engraved stones than were possessed by the Hatch Company. Nor does it appear that the defendant refuses to. carry out the agreement made with the Hatch Company. So far as it appears, the defendant maybe quite willing to carry out the original agreement and to print for the plaintiff at the rates stipulated for with the Hatch Company. However that may be, we hold that this plaintiff never had any title to, or any right to, the possession of, these stones, and that the agreement, which he testified *387 to, was one simply for the performance of "services in the making and the transferring of lithographic engravings. In any view of the case, it .is impossible to see how the plaintiff could allege that there had been any wrongful conversion of his property by the defendant, and the judgment appealed from should be affirmed, with costs.
All the judges concurred (BARTLETT, J., being of opinion that the Hatch Company and plaintiff were, under ■the contract, tenants in common of the stones and engravings thereon ; but concurring on the ground that plaintiff invoked an improper rem’edy).
Judgment affirmed.